## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE CLARKE and RUTH MAKI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> MANASSEH JORDAN MINISTRIES, INC., PROPHET MANASSEH PRODUCTS, and YAKIM MANASSEH JORDAN, <br><br> Defendants. | **CASE NO. _____** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Steve Clarke and Ruth Maki ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following on information and belief, except that Plaintiffs' allegations as to their own actions are based on personal knowledge.

## NATURE OF THE ACTION

1.  Defendant Yakim Manasseh Jordan is a 25-year-old self-identified "prophet" who lives a lavish lifestyle funded by the money donated to his "non-profit" corporations. Through phone calls, live television appearances, and his website, www.prophetmanasseh.com, Jordan solicits donations from religious followers, suggesting donations are a way to prove ones' faith. Jordan then uses these donations to fund the purchase of multi-million dollar homes and fleets of luxury cars. His corporations, Manasseh Jordan Ministries, Inc., and Prophet Manasseh Products, are shell corporations and alter-egos established to enable Jordan to commit willful torts for his own personal gain.

2.  Since December 2015, Defendants Yakim Manasseh Jordan, Manasseh Jordan Ministries, Inc., and Prophet Manasseh Products (collectively "Defendants") made at least 20 calls to Plaintiffs' cellular telephones using an autodialer and an artificial or prerecorded voice. For example, Defendants called Mr. Clarke's cellular phone with a pre-recorded message every week over the course of at least seven weeks, even after he asked them to stop calling. The following chart shows each date and time that Defendants called Mr. Clarke's cellular telephone number from their (800) 352-3407 number:

| **Date** | **Time** | **Number Calling** |
|---|---|---|
| 12/7/15 | 3:45 PM | (800) 352-3407 |
| 12/9/15 | 1:07 PM | (800) 352-3407 |
| 12/9/15 | 3:21 PM | (800) 352-3407 |
| 12/14/15 | 2:19 PM | (800) 352-3407 |
| 2/16/15 | 4:41 PM | (800) 352-3407 |
| 12/19/15 | 1:47 PM | (800) 352-3407 |
| 12/21/15 | 2:07 PM | (800) 352-3407 |
| 12/28/15 | 2:01 PM | (800) 352-3407 |
| 12/30/15 | 2:03 PM | (800) 352-3407 |

| | | |
|---|---|---|
| 1/4/16 | 2:04 PM | (800) 352-3407 |
| 1/13/16 | 1:06 PM | (800) 352-3407 |
| 1/18/16 | 1:06 PM | (800) 352-3407 |
| 1/20/16 | 1:04 PM | (800) 352-3407 |
| 1/25/16 | 1:13 PM | (800) 352-3407 |

3.       In total, Defendants called Mr. Clarke at least 14 times using an autodialer and/or an artificial prerecorded voice without his prior express written consent.

4.       Ms. Maki was similarly harassed by Defendants, receiving multiple calls with a pre-recorded message for several weeks. The following chart shows each date and time that Defendants called Ms. Maki on her cellular telephone from Defendants' (800) 352-3407 number:

| **Date** | **Time** | **Number Calling** |
|---|---|---|
| 12/7/15 | 3:40 PM | (800) 352-3407 |
| 12/7/15 | 3:40 PM | (800) 352-3407 |
| 12/9/15 | 1:08 PM | (800) 352-3407 |
| 12/14/15 | 2:14 PM | (800) 352-3407 |
| 12/16/15 | 4:44 PM | (800) 352-3407 |
| 12/21/15 | 2:04 PM | (800) 352-3407 |

5.       In total, Defendants called Ms. Maki on her cellular phone at least 6 times using an autodialer and/or an artificial prerecorded voice without her prior express written consent.

6.       Defendants' unsolicited robocalls are regularly placed to a massive number of cellular phones without obtaining prior consent of unsuspecting people. As demonstrated above, on December 7, 2015, Plaintiff Clarke and Plaintiff Maki received robocalls from Defendants only 5 minutes apart. On December 9, 2015, they received unsolicited robocalls only two minutes apart.

7.       Plaintiffs were unable to document all of Defendants' calls to their cellular telephones because Defendants call from a plethora of different numbers in addition to the (800) 352-3407 number listed above.

2

8. When Plaintiffs and Class Members answer the calls from Defendants, they heard pre-recorded messages from Defendant Yakim Manasseh Jordan on behalf of Defendants Manasseh Jordan Ministries, Inc and Prophet Manasseh Products. The messages are for marketing and solicitation purposes, and at no time is there any interaction with nor intervention from a live person.

9. In addition to calling Plaintiffs and class members with a pre-recorded message, Defendants use an autodialer to complete the calls. Specifically, Defendants' calls have a telling pause or dead air after Plaintiffs and class members answer their cellular devices, thereby indicating that Defendants are using an autodialer without Plaintiffs' and class members' prior express consent.

10. Plaintiffs bring this action for injunctive relief and statutory damages arising out of and relating to the conduct of Defendants in negligently, knowingly, and willfully contacting Plaintiffs and class members on their telephones using an artificial or prerecorded voice without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**PARTIES**

11. Plaintiff Steve Clarke is, and at all times mentioned herein was, a resident of Grand Terrace, California and a citizen of the State of California.

12. Plaintiff Ruth Maki is, and at all times mentioned herein was, a resident of San Marcos, California and a citizen of the State of California.

13. On information and belief, Defendant Manasseh Jordan Ministries, Inc. was a Texas corporation with its principal place of business located in Houston, Texas. Defendant Manasseh Jordan Ministries also had an operating address at 310 Riverside Drive, New York, New York 10025. It is a purported, unverifiable, unregistered entity controlled and operated by Defendant Yakim Manasseh Jordan with a last known address of 708 3rd Ave., 6th Floor, New York, NY 10163. Throughout the class period, Defendant Yakim Manasseh Jordan has represented that Manasseh Jordan Ministries, Inc. is an active, existing entity by using the name

to reserve rights on his website (http://www.prophetmanasseh.com/) and to market, advertise, and sell products and services offered in the pre-recorded messages played during his unlawful telemarketing calls.

14.     Defendant Prophet Manasseh Products is a New York corporation with its principal place of business located in New York, New York.  It is owned and operated by Defendant Yakim Manasseh Jordan.  Defendant Yakim Manasseh Jordan's website (prophetmanasseh.com) reflects Defendant Prophet Manasseh Products' name in its title.  Further, to purchase various products from Defendant Yakim Manasseh Jordan, consumers are directed to a shopping page that reserves rights to Defendant Prophet Manasseh Products.  *See* https://prophetmanasseh.com/products/#content. Throughout the class period, Defendant Yakim Manasseh Jordan has used Defendant Prophet Manasseh Products as a means to market, advertise, and sell products and services offered in the pre-recorded messages played during his unlawful telemarketing calls.

15.     Defendant Yakim Manasseh Jordan is a resident of Sunny Isles Beach, Florida.  He has properties in various states, including Florida and New York.  He is the owner, operator, and alter-ego of Manasseh Jordan Ministries, Inc. and Prophet Manasseh Products.  These entities are shell corporations established by Jordan as a means to commit willful torts for his own personal gain.  Mr. Jordan uses his alter egos, Manasseh Jordan Ministries and Prophet Manasseh Products, to knowingly break the law and repeatedly violate the TCPA.  He owns, directs, and otherwise controls Defendant Manasseh Jordan Ministries, Inc. and Defendant Prophet Manasseh Products, and he is responsible for directing the national telemarketing campaign in an effort to raise money for his lavish lifestyle.  Mr. Jordan is involved in all aspects of Manasseh Jordan Ministries, Inc. and Prophet Manasseh Products' business, including marketing, advertising, and his national telemarketing campaign.  He participated in making the telemarketing calls directly and personally by either making them himself or by knowingly authorizing others to make the calls on his behalf.

16.     Whenever it is alleged herein that Defendants did any act, it is meant that:

    a.   The Defendant(s) performed or participated in the act, and/or;

4

    b. The Defendants' officers, agents, trustees or employees performed or participated in the act on behalf of and under the authority of Defendants.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendants; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

18. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of the TCPA.

19. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Prophet Manasseh Products is incorporated in this District, Defendants transact significant business within this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.   The Telephone Consumer Protection Act Of 1991**

20. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

21. Among other things, the TCPA prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. . . ." In addition, the TCPA prohibits making "any call" using "an artificial or prerecorded voice" to a wireless number. 47 U.S.C. § 227(b)(1)(A)(iii).

22. According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls are costly and inconvenient.

23. The FCC has issued rulings clarifying that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided by the individual. 2012 FCC Order, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

### B.   Defendants' Robocalls to Plaintiffs and Class Members

24. Prior to the calls at issue in this action, Plaintiffs had never had any contact with Defendants. Plaintiffs never consented in writing, or otherwise, to receive telephone calls from Defendants. Plaintiffs have never provided Defendants with their telephone numbers.

25. Defendants called Plaintiffs dozens of times using an autodialer and/or an artificial or prerecorded voice without their prior express written consent. Further, both Plaintiffs specifically told Defendants on numerous occasions to stop calling.

26. There are a legion of online consumer complaints regarding Defendants' unsolicited telemarketing robocalls:

- "I have been receiving the calls from the so called prophet Menassah. It's been everyday sometimes 6 times a day for the past year."[1]
- "They don't remove you from their calling lists. I tried that, and I'm still getting the same disgusting calls. Anyone have ideas where we can report this scamming, lying, cheating scumbag?"[2]
- "My boyfriend gets weekly [calls] from a man calling himself the prophet Manasseh Jordan with a recording asking for money and accusing him of being a sinner (or whatever). We're often in bed for the night. Each time the call comes from a different number. It's been happening for over a year."[3]

---

[1] http://800notes.com/Phone.aspx/1-800-318-7853/27

[2] http://800notes.com/Phone.aspx/1-800-318-7853/27

[3] https://www.reddit.com/r/legaladvice/comments/2ehydv/being_harassed_by_evangelical_telemarketer/

- "My goodness they call 2X to 3x daily for the past 2 months....."[4]
- "Call comes from Prophet Manasseh Jordan Ministries. Pre-recorded message from Manasseh Jordan says I have special needs and blessings are coming my way. Leaves a toll number to call for a conference call that evening. Allegedly, the evening call is a solitation for donation. Basically a scam."[5]
- "I continue to receive 2-3 calls a week regardless of my request to be removed from their call list. They use many numbers. Here are a few- 347-577-9428, 908-660-0041, 800-352-3407, 800-203-0028, 347-577-9467."[6]

## CLASS ACTION ALLEGATIONS

27. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated.

28. Plaintiffs Clarke and Maki propose the following Robocall Class definition, subject to amendment as appropriate:

> All persons within the United States who (a) received a non-emergency telephone call; (b) on his or her cellular telephone or residential telephone line; (c) made by or on behalf of Defendants; (d) for whom Defendants had no record of prior express written consent; (e) and such phone call was made with the use of an artificial or prerecorded voice; (f) at any time in the period from July 23, 2015 to the date that class notice is disseminated.

29. Collectively, all these persons will be referred to as the "Robocall Class." Plaintiffs represent, and are members of, this proposed class. Excluded from the Robocall Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families.

30. Plaintiffs Clarke and Maki also propose the following Autodialer Class definition, subject to amendment as appropriate:

---

[4] http://800notes.com/Phone.aspx/1-800-318-7853/27

[5] http://whocallsme.com/Phone-Number.aspx/8003523407

[6] http://dncl.me/8003523407.tel?page=4

7

> All persons within the United States who (a) received a non-emergency telephone call; (b) on his or her cellular telephone; (c) made by or on behalf of Defendants; (d) for whom Defendants had no record of prior express written consent; (e) and such phone call was made with the use of an automatic telephone dialing system as defined under the TCPA; (f) at any time in the period from July 23, 2015 to the date that class notice is disseminated.

31. Collectively, all these persons will be referred to as the "Autodialer Class." Plaintiffs represent, and are members of, this proposed class. Excluded from the Autodialer Class are Defendants and any entities in which Defendant has a controlling interest, Defendants' agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families.

32. Plaintiff Clarke also proposes the following Internal Do-Not-Call List ("IDNCL") Class definition, subject to amendment as appropriate:

> All persons within the United States who (a) after notifying any of the Defendants that they no longer wished to receive calls from or on behalf of any of the Defendants; (b) received one or more calls from or on behalf of Defendants; (c) using either an artificial or prerecorded voice or an automatic telephone dialing system as defined under the TCPA; (d) at any time in the period from July 23, 2015 to the date that class notice is disseminated.

33. Collectively, all these persons will be referred to as the "IDNCL Class." Plaintiff Clarke represents, and is a member of, this proposed class. Excluded from the IDNCL Class are Defendants and any entities in which Defendant has a controlling interest, Defendants' agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families.

34. Plaintiffs do not know the exact number of members in each class, but reasonably believe based on the scale of Defendants' business, and the number of online complaints, that the Classes are so numerous that individual joinder would be impracticable.

35. Plaintiffs and all members of the Classes have been harmed by the acts of Defendants in the form of multiple involuntary telephone and electrical charges, the aggravation,

nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights.

36. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The proposed Classes can be identified easily through records maintained by Defendants.

37. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the Classes' claims predominate over questions which may affect individual members of the proposed Classes. Those common question of law and fact include, but are not limited to, the following:

   a. Whether Defendants made telephone calls to class members using an autodialer without their prior express written consent;

   b. Whether Defendants made telephone calls to class members using an artificial or prerecorded voice without their prior express written consent;

   c. Whether Defendants made telephone calls to class members who asked not to be contacted;

   d. Whether Defendants' conduct was knowing and/or willful;

   e. Whether Defendants are liable for damages, and the amount of such damages, and

   f. Whether Defendants should be enjoined from engaging in such conduct in the future.

38. As persons who received numerous and repeated calls on their telephones using an artificial or prerecorded voice, without their prior express written consent, Plaintiffs assert claims that are typical of each member of the Classes. Plaintiffs will fairly and adequately represent and protect the interests of the proposed Classes, and have no interests which are antagonistic to any member of the proposed Classes.

39. Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes.

40. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendants to comply with the TCPA. The

interest of the members of the proposed Classes in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA is relatively small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the members of the classes, by definition, did not provide the prior express consent required under the statute to authorize calls to their telephones.

41. Defendants have acted on grounds generally applicable to the proposed Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the proposed class as a whole appropriate.  Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION
### FIRST COUNT
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq.*

42. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

43. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

44. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq*., Plaintiffs and members of the proposed Classes are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

45. Plaintiffs and members of the proposed Classes are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

46. Plaintiffs and members of the proposed Classes are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT,
## 47 U.S.C. § 227, *et seq*.

47. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

48. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

49. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and members of the Classes are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

50. Plaintiffs and members of the proposed Classes are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

51. Plaintiffs and members of the proposed Classes are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all members of the proposed Classes the following relief against Defendants:

a. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

b. As a result of Defendants' willful and/or knowing violations of the TCPA, Plaintiffs seek for themselves and each member of the proposed Classes treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

c. As a result of Defendants' violations of the TCPA, Plaintiffs seek for themselves and each member of the proposed Classes $500.00 in statutory damages for each and every call that violated the TCPA;

d. An award of attorneys' fees and costs to counsel for Plaintiffs and the proposed Classes;

e. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate classes, finding that Plaintiffs are proper representatives of the classes, and appointing the lawyers and law firm representing Plaintiffs as counsel for the classes;

f. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff s demand a trial by jury of any and all issues in this action so triable of right.

Dated: March 11, 2016

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Joshua D. Arisohn*
Joshua D. Arisohn

Scott A. Bursor
Joseph I. Marchese
Joshua D. Arisohn
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: scott@bursor.com
jmarchese@bursor.com
jarisohn@bursor.com
fklorczyk@bursor.com

*Attorneys for Plaintiffs*